In re MARRIAGE OF Susan
HATZIEVGENAKIS and
Vassilis Hatzievgenakis,

Upon the Petition of Susan Hatzievgenakis, Petitioner–Appellee,

And Concerning Vassilis Hatzievgenakis, Respondent–Appellant.

No. 88–388.

Court of Appeals of Iowa.

Nov. 29, 1988.

Steven W. Guiter, of Johnston, Hicks & Guiter, Knoxville, for respondent-appellant.

Garold F. Heslinga, of Heslinga, Heslinga, Dixon & Grotewold, Oskaloosa, for petitioner-appellee.

Considered by OXBERGER, C.J., and DONIELSON and SACKETT, JJ.

SACKETT, Judge.

Respondent-appellant Vassilis Hatzievgenakis appeals the decree dissolving his marriage to petitioner-appellee Susan Hatzievgenakis. He contends the trial court (1) should have granted his motion for continuance, (2) should not have placed unreasonable restrictions on allowing him to take his son outside the United States for visitation, and (3) made an inequitable property and child support award. We affirm as modified.

The parties were married in 1980. Susan, a resident of Marion County, Iowa, is a travel agent. Vassilis, a Greek national, is a ship captain. They have a child who was born in Iowa in 1982. The child is a United States and Greek citizen. Susan maintains a residence in Marion County; Vassilis maintains a residence in Greece.

On April 27, 1987, Susan filed in Marion County for a dissolution of their marriage. Vassilis was personally served in New Orleans on May 21, 1987, and on June 9, 1987, Vassilis answered the petition and in doing so submitted to the jurisdiction of the Iowa court on all issues. He requested joint custody of the child. On October 7, 1987, Vassilis filed a financial statement and on November 7, 1987, Susan filed a financial statement. Interrogatories were pro-

pounded to Vassilis which were answered October 7, 1987.

Neither party filed a trial certificate. *See* Iowa Rule of Civil Procedure 181. However, on August 21, 1987, the court on its own motion in an attempt to comply with case disposition time standards established by the Iowa Supreme Court, ordered a scheduling conference. An order was issued September 11, 1987 closing discovery on December 10, 1987; closing pleadings on December 17, 1987 and setting the trial for January 28, 1988. A copy of the order was mailed to Vassilis' attorney on September 14, 1987. On January 11, 1988, Vassilis filed a motion to continue claiming his tour of duty as a Staff Captain for a Greek cruise ship sailing in the Cape Horn area of South America made it impossible to attend the January trial. He asked for a continuance until late June or July 1988. Susan resisted. The trial court overruled the motion.

### I.

■ Vassilis contends the trial court erred in not granting a continuance. The granting or denial of a motion for continuance is in the discretion of the trial court and will be interfered with on appeal only where there is a clear abuse of discretion. *Department of Gen. Servs., State of Iowa v. R.M. Boggs Co., Inc.*, 336 N.W.2d 408, 410 (Iowa 1983); *Estate of Lovell*, 344 N.W.2d 576, 578 (Iowa App.1983). Prejudice must be shown to require a reversal for denial for such a motion. *Cavanagh v. O'Connor*, 194 Iowa 670, 186 N.W. 907 (1922). It must be shown an injustice has been done. *In re Tomin's Estate*, 260 Iowa 1129, 152 N.W.2d 286 (1967). Ordinarily an abuse is found to exist only where there is not support in the record for the trial court's action. *Rath v. Sholty*, 199 N.W.2d 333, 336 (Iowa 1972).

Vassilis signs on a ship for an extended period of time. His employment may be jeopardized if he leaves the ship during his tour of service. This was the first time the case was set for trial. Vassilis has not requested any other continuances and appears to have filed pleadings and financial information in a timely manner. He did not request a continuance until eleven days before trial despite the fact the case had been set since September 1987.

Vassilis has failed to show the trial court abused its discretion in not granting him a continuance.

### II.

■ Vassilis contends the trial court unduly restricted his out of country visitation. The decree provided Vassilis have reasonable visitation with the child in the continental United States and he have the right commencing in the summer of 1989 to take the child to Greece or outside the United States, but before he could exercise out-of-country visitation with his son he be required to first meet the following conditions:

(1) That he have at least two significant visitations with the child within the six months prior to the visit;

(2) He post a bond with the Marion County Clerk of Court in the amount of $20,000 cash or surety;

(3) All child support payments then be current;

(4) His property settlement payments ordered previously be paid by the Respondent.

(5) He pay the travel expenses.

Vassilis contends the first four restrictions should be removed or modified. Vassilis was named a joint custodian. He has met the joint custody test. *See In re Marriage of Leyda*, 355 N.W.2d 862, 864 (Iowa 1984). The trial court has determined the child can go to Greece. Susan has not cross-appealed on either issue.

The only thing we must determine is whether the trial court imposed too many restrictions. There is no evidence Vassilis has ever threatened or indicated he would keep the child in Greece. Susan's request for the restrictions was based on the following evidence. She was concerned about the child going to Greece because she lived in Greece. She feels there is no separation of church and state in Greece. Greece is a male oriented society and in a dissolution

the father gets custody. Susan read an article and saw a television show that convinced her she would have problems returning the child from Greece. The child does not speak Greek.

We recognize there are sometimes problems securing the return from a foreign country of a child to a custodial parent in the United States, particularly where the noncustodial parent is a citizen of the other country and once out of the United States the child no longer has the rights and liberties of the United States Constitution.

The Iowa court recently was confronted with the problem of a father who while his marriage dissolution was pending in Iowa sent his child to his home country of Jordan. He remained in Iowa. Nearly two years later the child had not been returned to Iowa despite numerous orders directing the father to return the child to Iowa. *See Amro v. Iowa Dist. Ct. for Story County*, 429 N.W.2d 135 (Iowa 1988).

We find after reviewing Vassilis' financial statement the restrictions imposed will effectively preclude Vassilis from having his child visit with him in Greece. We have long subscribed to a philosophy children of broken homes should have substantial contacts with *both* parents. *See In re Marriage of Jerome*, 378 N.W.2d 302, 305 (Iowa App.1985). The world does not end at the borders of Iowa. These parties lived with the child in both Greece and the United States. Susan is a travel agent. Vassilis is a Greek ship captain. Both are sophisticated and knowledgeable about international travel. They come from diverse cultures and backgrounds. The child is a citizen of two countries and has a right to be introduced and exposed to both. The child has a grandmother, an aunt and uncle and cousins he will not know unless he travels to Greece.

We examine provisions for authorizing out of the country visitation by noncustodial parents in other jurisdictions. In California the court allowed visitation in South Africa, determining the children would benefit from visiting with this father in his home community and the children would be well cared for by the father. *See Milne v.*

*Goldstein*, 202 Cal.App.2d 582, 20 Cal.Rptr. 903 (1962). In Louisiana the court allowed the father to exercise visitation in Mexico finding it would be impossible for the children to spend time with him unless they went to Mexico where he worked. *See Creech v. Creech*, 367 So.2d 1244 (La.Ct. App.1979). In Oregon the court did not prohibit visitation where the mother had a fear but no facts indicating the children would not be returned. *See In re Marriage of Ross*, 45 Or.App. 565, 608 P.2d 1214 (1980).

There is nothing in this record and Susan has presented no evidence other than her fears to support her position. Vassilis has appeared and consented to the jurisdiction of the Iowa courts on all issues. There is no evidence he has thwarted Susan's custody in any way. He has the right to assume we will offer him the same justice we offer Susan. While she expresses fears the child will not be allowed to leave Greece, she asks our courts to prevent the child from leaving the United States.

Our hope for justice for our citizens in foreign courts can best be forwarded by our efforts to offer fair and equitable treatment to foreign nationals in our jurisdiction. We cannot assume Vassilis will not honor our decree.

■ We examine the restrictions imposed by the trial court. Vassilis contends the requirement for him to have two visitations prior to the trip should be removed. He contends his work schedule, geography and expense makes the required visits impossible. While ideally we would like to see this child have frequent contacts with his father before spending a month with him, we find as Vassilis argues geography, work schedule and expense makes such a requirement prohibitive. We agree with Vassilis and strike that provision.

■ Vassilis next contends the provisions making the visitation contingent on payment of child support and the property settlement are not in accord with the dictates of Iowa case law. We agree. The Iowa court has said the opportunity for association with one's noncustodial parent

should not be denied because there has not been compliance with the support-money provisions of a decree. *See Sweat v. Sweat,* 238 Iowa 999, 1009–10, 29 N.W.2d 180, 185 (1947) (the court modified a decree to strike provisions making visitation contingent on the payment of child support) and *Fitch v. Fitch,* 207 Iowa 1193, 1196, 224 N.W. 503 (1929) (where the court modified the decree to strike a provision visitation was contingent on the payment of alimony).

Following the dictates of *Sweat* and *Fitch* we strike from the visitation requirement the provision that all property settlement and alimony be paid before out-of-country visitation is authorized. In doing so, however, we find it incumbent to remind Vassilis that courts of this state expects him to comply with the terms of the decree. We consider his obligation to support his child to be a most serious one and his failure to pay could subject him, among other things, to the contempt power of the Iowa courts.

Vassilis contends the bond requirement should be reduced. He offered to post a bond and does not disagree with a bond requirement; rather he contends his financial condition prevents him from posting a $20,000 bond. We find the bond should be reduced to $10,000.

### III.

Vassilis contends the property division is not equitable. The trial court ordered Vassilis to pay Susan $11,500 as a property settlement, $1,500 toward her credit card indebtedness and $600 toward attorney fees. He contends the award is not equitable. Vassilis claims the parties have assets of $10,000. Susan contends they have net assets of about $100,000, including a condominium in Greece she claims has a value of $85,000 and is not encumbered. Vassilis denies owning the condominium. The only evidence of condominium ownership is Susan's testimony that Vassilis told her once they owned the condominium and another time they did not. Susan also contends $8,300 was transferred to Greece in 1983 for the condominium. Vassilis agrees the $8,300 was transferred to an account in Greece. However, he contends and bank records filed in response to a request for production show $11,200 was transferred from Greece to the Interstate Bank of Urbandale in September 1986. Susan makes no explanation for this transfer.

We determine the parties have a combined net worth of approximately $12,000, less household goods and furnishings which Susan has in her possession. Susan also apparently has a 1982 Oldsmobile, jointly owned, which she values at $4,000. The trial court made no disposition of the parties' assets, other than to provide for Vassilis' payment of $11,500 as a property settlement and a $1,200 payment toward debt.

We modify the property award made by the trial court to strike the provision for Vassilis to pay a $11,500 property settlement and $1,200 toward debt. We award Susan all household goods and furnishings in her possession and the 1982 Oldsmobile, as well as her checking and savings account in Iowa. The lot in Greece, Japanese car and Greek bank accounts shall go to Vassilis except he shall pay Susan $3,000. He shall also pay the Visa, Discover and Master Card debts of $2,120. Susan shall be responsible for the Younkers and Seiferts bills of $1,146. We find such an award to be equitable. *See In re Marriage of Byall,* 353 N.W.2d 103, 106 (Iowa App. 1984).

### IV.

Vassilis contends $500 a month child support is inequitable. We agree. Vassilis grossed $2,293.93 monthly and netted $1,985.25. We modify to $400 per month.

Each party shall pay his or her own attorney fees on appeal. Court costs are taxed one-half to each party.

AFFIRMED AS MODIFIED.