**William Daniel HOOKER**

v.

**F. E. ARNOLD, Warden, U.S. Penitentiary, Lewisburg, Pennsylvania.**

**No. 76–765 Civil.**

United States District Court,
M. D. Pennsylvania.

March 21, 1978.

William Daniel Hooker, pro se.

James W. Walker, Asst. U. S. Atty., Scranton, Pa., for defendant.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Plaintiff, confined at a federal correctional institution in Tennessee according to the most recent information received, filed this action under 28 U.S.C. § 1331 against the former Warden of the United States Penitentiary in Lewisburg, Pa. (Lewisburg). Plaintiff seeks damages for two periods of allegedly unconstitutional confinement in administrative segregation, first, while plaintiff was a pretrial detainee and second, while a presentence detainee after conviction. Defendant has filed a second motion for summary judgment, supported by a memorandum of law and defendant's personal affidavits. Defendant argues that (1) there was no personal involvement on his part in plaintiff's confinement in segregation; (2) certain reasons justified plaintiff's confinement; and (3) defendant is protected by official immunity in the exercise of a discretionary function. Plaintiff has filed an opposing memorandum; the record also contains the personal affidavit of plaintiff. In opposing the motion, plaintiff renews his

request that the court appoint counsel in this matter. The court's authority in this regard is limited to requesting that counsel appear in plaintiff's behalf. See 28 U.S.C. § 1915(d). Plaintiff's request will at this time be denied, with leave to renew his request should there be further proceedings in this matter warranting appointment. See Alexander v. Ramsey, 539 F.2d 25 (9th Cir. 1976). Presently before the court is defendant's motion for summary judgment. For reasons set forth infra, defendant's motion for summary judgment will be denied.

Plaintiff contends that he was confined to administrative segregation solely by reason of his status, once while plaintiff was a pretrial detainee and on a second occasion after plaintiff's conviction but before his sentencing.[1] The amended complaint alleges[2] that the United States committed plaintiff to the custody of the defendant on December 19, 1975. Bail was set at $25,000 at an arraignment conducted January 20, 1976. Plaintiff did not post a bond until February 2; he alleges he remained in administrative confinement as a pretrial detainee until that time. On February 26, 1976, plaintiff was found guilty and the court ordered revocation of bail. He alleges that he was returned to defendant's custody on February 29, 1976, and was again placed in administrative segregation where he remained for an unspecified period of time. Until defendant's transfer to a position as warden of another federal correctional institution (effective August 20, 1976), he had overall responsibility for the operations as Lewisburg. On May 7, 1976, the Court of Appeals for the Third Circuit held in United States ex rel. Tyrrell v. Speaker, 535 F.2d 823 (1976), that pretrial detainees could not be confined in administrative segregation solely on the basis of their status. Plaintiff was sentenced August 10, 1976, and the period of presentence confinement ended.

---

1. Plaintiff was sentenced by this court in United States v. Hooker, Criminal No. 76–7.

2. The affidavits submitted contain no references to the dates during which plaintiff was

confined in administrative segregation. The dates that appear here are those alleged in the complaint or those that are a matter of record in the criminal case. See note 1 supra.

Plaintiff alleges that the two periods of administrative segregation were accompanied by various deprivations including curtailment of exercise and religious observations, reduction in the number of showers and phone calls permitted, the requirement that meals be taken in the cell, and a reduction in access to the law library and the courts.[3]

By affidavit and in his memorandum, defendant contends that he lacked personal involvement in the decision to place plaintiff in administrative segregation during the two periods in question. Specifically, defendant avers that he had no knowledge of plaintiff's confinement.[4] However, defendant also acknowledges (1) that he had the responsibility "to determine appropriate housing for all persons . . based on various factors including the status of the individual and security concerns presented by each individual"; (2) that his authority was often delegated to subordinates who made individual determinations based on institutional policy; and (3) that the policy of the institution was that "pretrial inmates," and, it appears from other portions of the affidavit, presentence inmates as well, "would normally be housed in detention status as Marshal's holdovers."[5] A Warden of a prison is clearly responsible for the implementation of a prison policy notwithstanding the fact that subordinates are directed to carry the policy out. Under the circumstances here, defendant cannot be granted summary judgment on the ground that he lacked personal involvement in any deprivation.

Defendant by affidavit advances the following reasons for the policy of housing pretrial and presentence detainees in "detention status": (1) elimination of contact with sentenced prisoners in order to avoid the possibility that a prisoner in general population will harm a pretrial or presentence detainee or vice versa; (2) the lack of knowledge about a detainee's criminal or psychological background and the resulting threat to institutional security; and (3) the short period of time these detainees normally remained at Lewisburg.[6] Defendant's affidavit further indicates that sentenced prisoners being disciplined and holdovers being transferred between other institutions were also kept in administrative segregation, but were held apart from the pretrial and presentence detainees.

Plaintiff's pretrial segregation was not made unlawful solely by the subsequent decision in *Tyrrell*. As discussed in the memorandum of July 29, 1977, *Tyrrell* held that a pretrial detainee may not be confined under conditions more restrictive than those necessary to insure the detainee's appearance at trial unless there were reasons specific to the detainee for the further restrictions. The conditions of administrative segregation were found to be greater than necessary to insure appearance, and were found to be imposed solely because of the plaintiff's status as a pretrial detainee. *Tyrrell* should not, however, be made retroactive. The *Tyrrell* decision relied upon authorities outside the Third Circuit and not binding upon defendant.[7] *See United*

---

3. *See* Plaintiff's Complaint at ¶¶ 7–11 (Doc. # 1, filed June 16, 1976); Plaintiff's Amended Complaint at ¶¶ a–j (Doc. # 10, filed Oct. 18, 1976). These allegations, regarding the effect of plaintiff's confinement, are rather generalized. Nevertheless, with regard to the specific constitutional deprivation charged, i. e. confinement in administrative segregation on the basis of status, plaintiff's allegations are sufficiently precise and factual. To prevail plaintiff must show that the confinement suffered rises to the level of a constitutional deprivation.

4. The affidavit of plaintiff disputes this, contending that a conversation occurred with defendant in which plaintiff apprised him of the confinement in segregation. *See* Affidavit of

William D. Hooker, dated April 13, 1977 (Doc. # 27, filed April 15, 1977). Because of the existence of other undisputed facts, this conflict is not material.

5. *See* Affidavit of Floyd E. Arnold at ¶¶ 4–6 (Doc. # 33, filed Aug. 31, 1977) (hereinafter cited as "Arnold's Second Affidavit").

6. Arnold's Second Affidavit, *supra,* note 7, at ¶ 6.

7. *E. g.,* the Court of Appeals cited *Rhem v. Malcolm,* 507 F.2d 333 (2d Cir. 1974). Pre-*Tyrrell* dicta in a Third Circuit decision implied a contrary rule. *See Main Road v. Aytch,* 522 F.2d 1080, 1086 (3d Cir. 1975).

*States ex rel. Land v. Sielaff,* 564 F.2d 153, 155 (3d Cir. 1977) (per curiam). *Cf. Procunier v. Navarette,* 434 U.S. 555, 566, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). Nevertheless, other decisions generally applicable to detainees in "holdover" status afforded detainees such as plaintiff certain due process protections which must also be observed.

■ According to defendant's affidavit, plaintiff was treated as a "holdover" prisoner during the periods of pretrial and presentence detention. As a holdover, plaintiff was confined in administrative segregation under conditions which, if substantiated, could constitute a due process deprivation.[8] Persons confined in administrative segregation, while not entitled to a *Wolff* hearing,[9] are entitled to a periodic review of their confinement, and the prison administrators must have a valid reason for the segregation. *Hodges v. Klein,* 562 F.2d 276 (3d Cir. 1977) (per curiam); *Kelly v. Brewer,* 525 F.2d 394 (8th Cir. 1975); *Mayberry v. Robinson,* 427 F.Supp. 297, 309 (M.D.Pa.1977) (Muir, J.); *United States ex rel. Bennett v. Prasse,* 408 F.Supp. 988 (E.D. Pa.1976). The reasons advanced by defendant are reasons which would permit the confinement of all holdover prisoners in administrative segregation and are not the kind of reasons which have been found necessary in order to justify such confinement. Defendant states that his policy of confining holdover prisoners in administrative segregation was based upon a desire to keep such prisoners separate from the general population and from each other, upon general concerns for institutional security, and upon the usually short period of time the holdovers remained at Lewisburg. The policy promulgated by defendant did not require specific reasons for the segregation of a holdover prisoner, and, from the record as it presently exists, did not allow for a periodic review of that reason. Defendant does not state, for example, that plaintiff was placed in administrative segregation because he was a security risk, or because

they lacked knowledge as to his criminal and psychological background. In *Bennett* Judge Becker held that a specific reason was required before a holdover prisoner could be confined in administrative segregation. The fact that the plaintiff there represented a disciplinary problem for the institution was a constitutionally valid reason for administrative confinement. *See also Mayberry.* Once a constitutionally acceptable reason for the confinement has been advanced, prison officials must also review that reason periodically to insure that there exists a "valid, subsisting reason for the continuing solitary confinement." *Bennett,* 408 F.Supp. at 999. *See also Kelly; Mayberry.* No case has been found, and defendant has not cited one, permitting continued segregation merely because a prisoner was on holdover status or on grounds, such as those asserted by defendant, that can be generally applied to holdover prisoners. The record does not include any indication that a specific and constitutionally valid reason existed for plaintiff's continued segregation. Rather, it would appear that plaintiff's confinement was a result of defendant's general policy. The generalized institutional reasons defendant has advanced do not entitle him to summary judgment on this question.

Finally, defendant urges that summary judgment be granted him on the ground that he is protected by official immunity in the discharge of discretionary functions. *See Fidtler v. Rundle,* 497 F.2d 794 (3d Cir. 1974); *Johnson v. Alldredge,* 488 F.2d 820 (3d Cir. 1973). The short answer to defendant's argument is that this doctrine has been significantly eroded by later decisions. *See Skehan v. Board of Trustees of Bloomsburg State College,* 538 F.2d 53 (3d Cir. 1976) (en banc) (unanimous), *cert. denied,* 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976).

■ As the Court of Appeals made clear, the Supreme Court's decision in *Wood v.*

---

8. *See* note 4 and accompanying text *supra.* Plaintiff will have the opportunity to substantiate his allegations in pretrial proceedings or at trial.

9. *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

*Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), "significantly modified the law of immunity," 538 F.2d at 59. Since defendant is not protected by absolute immunity, *cf. Imbler v. Pachtman,* 424 U.S. 409, 418–19, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), he must rely upon the qualified defense of good-faith. Since the affidavits do not establish the absence of a factual question on the issue of good faith, defendant cannot be granted summary judgment.

Defendant is not entitled to summary judgment at this time and his motion will in all respects be denied.